## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICA FIRST LEGAL FOUNDATION,<br><br>*Plaintiff,*<br><br>v.<br><br>MERRICK GARLAND, *Attorney General of the United States, in his official capacity*<br><br>and<br><br>DEPARTMENT OF JUSTICE,<br><br>*Defendants.* | Case No.: 1:23-cv-02070-JMC |

## MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### Introduction

The Defendants Merrick Garland and the Department of Justice have actual knowledge that Hunter Biden is an "agent of a foreign principal" under the Foreign Agents Registration Act, 22 U.S.C. § 611 *et seq*. Ignoring nondiscretionary duties imposed by Congress, they have chosen not to seek and publish Mr. Biden's registration, nor provided him with a statutory exemption. *See id*. §§ 612(a) and (f), 616(a) and (d), 618(f) and (g). Pursuant to 5 U.S.C. § 706, America First Legal asks the Court for relief.

### Background

The Foreign Agents Registration Act, Pub. L. No. 75-583, as amended, requires defined "agents of foreign principals" who are engaged in political or other specified

activities to make periodic public disclosure of their agency relationship and of the activities, receipts, and disbursements in support of thereof. The Act is a paradigmatic public disclosure statute, enacted for the express purpose of ensuring citizens are "informed as to the identities and activities of [foreign agents]" so that they will "be better able to appraise them and the purposes for which they act." H.R. REP. NO. 89-1470, at 2 (1966), https://bit.ly/3ZYofCa. It protects the public's right to know what foreign governments and corporations are up to, protecting our national defense, economic security, and Constitutional system. Among other things, foreign agent registration provides a window into the foreign business relationships and entanglements of high-ranking political officials and their family members, thereby exposing influence peddling.

The Defendants have actual knowledge that Hunter Biden is an agent of (at a minimum) Ukrainian, Romanian, Kazakhstani, and Chinese Communist Party-connected principals. They have had, for years, indisputable, government-verified evidence that Mr. Biden has engaged in political activities for or in the interests of his foreign principals; acted as their public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of his foreign principals; solicited, collected, disbursed, or dispensed contributions, loans, money, or other things of value for or in the interest of his foreign principals; and represented the interests of his foreign principals before agencies and officials of the Government of the United States, including the former Vice President, all as defined at 22 U.S.C. § 611(c)(1). Pl's Statement of Undisputed Facts ¶¶ 21-23, 27–54, 56-90,

92, 94–95, 97–99, 101–103, 107. As explained below, if the Defendants know that an individual is required to register under the Foreign Agents Registration Act, but has not done so, then they have a nondiscretionary duty either to seek registration and make it public or undertake a waiver rulemaking under 22 U.S.C. § 612(f). The defendants have chosen not to do either of these things. Pl's Statement of Undisputed Facts at ¶¶ 21–22, 104–08.

America First Legal Foundation is a national nonprofit legal foundation that advocates for "America First" policies to protect our sovereignty, economic security, and Constitutional order. To that end, it gathers official information, analyzing and disseminating it through reports, press releases, media, and communications with congressional oversight committees. Pl's Statement of Undisputed Facts ¶ 104. *See, generally* AMERICA FIRST LEGAL FOUNDATION, *America First Legal Releases More of Biden's Vice-Presidential Records Revealing Influence Peddling and Corruption Between the White House and Hunter's Private Foreign Business Dealings* (May 3, 2023), https://bit.ly/46w7MrF; Letter from Reed D. Rubinstein, Senior Couns. and Dir. of Oversight and Investigations, to Matthew G. Olsen, Assistant Att'y Gen. for Nat'l Sec., U.S. Dep't of Just. (Mar. 15, 2023), https://bit.ly/3QnbgXu (copying members of Congress). The Defendants' failure or refusal to require Mr. Biden to register as a foreign agent and then make his registration public harms the Plaintiff by denying it information that is directly related to America First Legal's core educational mission, *see* Pl's Statement of Undisputed Facts ¶¶ 104–108, and for which it has a statutory right. 22 U.S.C. § 616(d).

3

## Standard of Review

The Administrative Procedure Act "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009); *Norton v. S. Utah Wilderness All.,* 542 U.S. 55, 64 (2004); *Mass. Coal. for Immigr. Ref. v. U.S. Dep't of Homeland Sec.*, No. 1:20-CV-03438 (TNM), 2023 WL 6388815, at *19 (D.D.C. Sep. 30, 2023); *Hamandi v. Chertoff*, 550 F. Supp. 2d 46, 50 (D.D.C. 2008).  This includes both agency action unlawfully withheld and agency action not in accordance with law. 5 U.S.C. §§ 706(1), 706(2)(A). Agency action is obviously "not in accordance with law" if it violates some extant federal statute or regulation. *E. Band of Cherokee Indians v. U.S. Dep't of the Interior,* 534 F. Supp. 3d 86, 97 (D.D.C. 2021) (citations omitted), *appeal dismissed*, No. 21-5114, 2022 WL 102544 (D.C. Cir. Jan. 5, 2022).[1]

America First Legal seeks summary judgment. Because this is an Administrative Procedure Act case, the summary judgment standard functions slightly differently. Here, the Court generally reviews the Defendants' decision as an appellate court addressing issues of law. *Id.* at 97; *Ashtari v. Pompeo*, 496 F. Supp. 3d 462, 467 (D.D.C. 2020); *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006).

---

[1] Arbitrary-and-capricious review is more amorphous. Agency action will fail that test if, for example, the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

This case requires the Court to construe the Foreign Agents Registration Act and to determine whether the Defendants' duties thereunder are discretionary or not. In doing so, the paramount goal is to make sense of the text. *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 133 (2000) (citation omitted). Therefore, the statute should be construed based on the ordinary public meaning of its terms at the time of its enactment. *Bostock v. Clayton County*, 140 S. Ct. 1731, 1738 (2020).

"Literal meaning" is not "ordinary meaning." *See, e.g., McBoyle v. United States*, 283 U.S. 25, 26 (1931) (in ordinary speech, "vehicle" does not cover an aircraft, even though "etymologically it is possible to use the word" that way); *Holy Trinity Church v. United States*, 143 U.S. 457, 463 (1892) ("The common understanding of the terms 'labor' and 'laborers' does not include preaching and preachers."); *see also* A. SCALIA, A MATTER OF INTERPRETATION 24 (1997) (a "good textualist is not a literalist"). Rather, in cases where the text contains evident dissonance, statutory context, structure, and purpose should be accounted for. *See Yates v. United States*, 574 U.S. 528, 538 (2015) (Ginsburg, J.) (citation omitted); *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997). Of course, the Court should presume that Congress says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then this first canon is also the last, and the judicial inquiry is complete. *Eagle Pharms., Inc. v. Azar,* 952 F.3d 323, 340 (D.C. Cir. 2020). But the substantive effect must, in the end, be always "coherent and consistent." *See*

*Sebelius v. Cloer*, 569 U.S. 369, 380 (2013); *United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 371 (1988).[2]

## Argument

Foreign actors routinely engage in efforts to influence our domestic and foreign policies, legislation, democratic processes, and public opinion. They exert this influence by employing lobbyists, public relations professionals, prominent businesspeople, or former U.S. government officials on their behalf. Such efforts are legal—if they are transparent. *See* U.S. DEPT. OF JUSTICE, *Protecting the United States from Covert Foreign Influence*, https://bit.ly/48UEuV7 (last visited Oct. 17, 2023).

Originally enacted in 1938, the Foreign Agents Registration Act, 22 U.S.C. § 611 et seq., helps the American people and their elected officials understand who is really behind such influence activity. The statute requires persons working on behalf of foreign governments or other foreign principals (including Americans) to disclose their relationships with foreign principals and information about their activities. Agents who fail to register are violating federal law, and they can be prosecuted if

---

[2] Even the absurdity canon, which empowers a court to ignore what Congress has written when it is so convinced by a conflict between the text and the purpose that it concludes Congress "almost surely could not have meant" what it said, *Eagle Pharms., Inc.*, 952 F.3d at 335 (citation omitted) is properly understood as "an implementation of (rather than ... an exception to) the ordinary meaning rule." W. ESKRIDGE, INTERPRETING LAW 72 (2016). "What the rule of absurdity seeks to do is what all rules of interpretation seek to do: *make sense* of the text." A. SCALIA & B. GARNER, READING LAW 235 (2012).

their failure is deliberate. *Protecting the United States from Covert Foreign Influence*, *supra*.

For many years, the Defendants have had actual knowledge that Mr. Biden has served as an agent of Ukrainian foreign principals, Pl's Statement of Undisputed Facts ¶¶ 28–54; Chinese foreign principals, *id.* ¶¶ 56–90; Russian foreign principals, *id.* ¶ 92; Kazakhstani foreign principals, *id.* ¶ 94–95; and Romanian foreign principals, *id* ¶ 97–99. However, they have failed or refused to seek and publish Mr. Biden's statutorily mandated registration statement and related filings.

## I.     America First Legal Has Standing

America First Legal, "like an individual plaintiff," has standing if it "shows actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *People for the Ethical Treatment of Animals v. Dep't of Agric.*, 797 F.3d 1087, 1093 (D.C. Cir. 2015) (cleaned up) ("*PETA*"). "A plaintiff suffers sufficiently concrete and particularized informational injury where the plaintiff alleges that: (1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016).

America First Legal must show the legal ruling it seeks—that the Defendants must seek Mr. Biden's registration and related filings and then publicly disclose them—might lead to additional factual information that Congress requires the

Defendants to make public. *See Campaign Legal Ctr. v. Fed. Election Comm'n*, 31 F.4th 781, 788 (D.C. Cir. 2022); *see also Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998); *Public Citizen v. Department of Justice,* 491 U.S. 440, 449 (1989). "[I]n assessing plaintiffs' standing, we must assume they will prevail on the merits of their [legal] claims." *LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011).

### A.     The Foreign Agent Registration Act requires the Defendants to publish foreign agent registration information for the public's benefit

#### 1.     *The statute's text and structure.*

The Foreign Agents Registration Act is codified in Subchapter II of U.S. Code Title 22, Chapter 11, 22 U.S.C. § 611 *et seq*. Section 611 is titled "Definitions." Section 611(b) defines a "foreign principal." Section 611(c) defines an "agent of a foreign principal."

Section 612 is titled "Registration statement." Section 612(a) provides that "No person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement and supplements thereto as required by subsections (a) and (b) of this section or unless he is exempt from registration under the provisions of this subchapter" within ten days after such person becomes an agent of a foreign principal, "under oath on a form prescribed by the Attorney General." Congress intended the registration statement to comprehensively disclose the scope and economic terms of an agent's relationship with his or her foreign principal. *See id.* §§ 612(a)(1)–(11). The Defendants' discretion with respect to the contents thereof is confined to adding "other statements, information, or documents pertinent to the purposes of this subchapter as the

8

Attorney General, having due regard for the national security and the public interest" and issuing exemptions from registration "by regulation." *Id.* §§ 612(a)(10), (f).

Section 613, titled "Exemptions," identifies limited categories of persons whom Congress excused from registration.

Section 614, titled "Filing and labeling of political propaganda," mandates that an agent of a foreign principal who "transmits or causes to be transmitted…any informational materials for or in the interests of such foreign principal" must file the materials with the Attorney General, and label them with a "conspicuous statement" that they are being distributed by an agent on behalf of the foreign principal. §§ 614(a), (b). Notably, subsection (e), titled "Information furnished to agency or official of United States Government", provides that is "unlawful" for an agent of a foreign principal:

> To transmit, convey, or otherwise furnish to any agency or official of the Government (including a Member or committee of either House of Congress) for or in the interests of such foreign principal any political propaganda or to request from any such agency or official for or in the interests of such foreign principal any information or advice with respect to any matter pertaining to the political or public interests, policies or relations of a foreign country or of a political party or pertaining to the foreign or domestic policies of the United States unless the propaganda or the request is prefaced or accompanied by a true and accurate statement to the effect that such person is registered as an agent of such foreign principal under this subchapter.

Section 616, titled "Public examination of official records; transmittal of records and information," provides, in relevant part, that registration statements are public documents. Section 616(d) states:

> The Attorney General shall maintain, and make available to the public over the Internet, without a fee or other access charge, in a searchable, sortable, and downloadable manner, to the extent technically practicable, an electronic database that—(A) includes the information contained in registration

statements and updates filed under this subchapter; and(B) is searchable and sortable, at a minimum, by each of the categories of information described in section 612(a) of this title.

Section 617, titled "Liability of officers," imposes broad enforcement duties on each "officer, or person performing the functions of an officer, and each director, or person performing the functions of a director, of an agent of a foreign principal," holding them accountable for the "obligation to cause such agent to comply with all the requirements of sections 614(a) and (b) and 615 of this title and all other requirements of this subchapter."

Section 618, titled "Enforcement and penalties," criminalizes willful violations of the Act and its regulations, provides for the removal of any alien who violates or conspires to violate the Act, and specifies that the failure to file a registration statement or supplements thereto is considered a continuing offense for as long as such failure exists "notwithstanding any statute of limitation or other statute to the contrary." *See* §§ 618(a), (c), (e). Subsection 618(f), titled "Injunctive remedy; jurisdiction of the district court," provides in relevant part:

> Whenever in the judgment of the Attorney General any person is engaged in or about to engage in any acts which constitute or will constitute a violation of any provision of this subchapter, or regulations issued thereunder, or whenever any agent of a foreign principal fails to comply with any of the provisions of this subchapter or the regulations issued thereunder, or otherwise is in violation of the subchapter, the Attorney General may make application to the appropriate United States district court for an order enjoining such acts or enjoining such person from continuing to act as an agent of such foreign principal, or for an order requiring compliance with any appropriate provision of the subchapter or regulation thereunder.

Subsection 618(g), titled "Deficient registration statement," provides:

> If the Attorney General determines that a registration statement does not comply with the requirements of this subchapter or the regulations issued

thereunder, he shall so notify the registrant in writing, specifying in what respects the statement is deficient. It shall be unlawful for any person to act as an agent of a foreign principal at any time ten days or more after receipt of such notification without filing an amended registration statement in full compliance with the requirements of this subchapter and the regulations issued thereunder.

Section 620 authorizes the Defendants to "prescribe, amend, and rescind such rules, regulations, and forms" as deemed "necessary to carry out the provisions of this subchapter."

Finally, section 621, titled "Reports to Congress," provides that the Attorney General "shall" report to the Congress every six months concerning the administration of this subchapter, including registrations filed pursuant to the subchapter, and the nature, sources, and content of political propaganda disseminated and distributed.

## 2. *The statutory purpose.*

As the Foreign Agent Registration Act "itself explains," its "basic purpose" is:

'To protect the national defense, internal security, and foreign relations of the United States by requiring public disclosure by persons engaging in propaganda activities and other activities for or on behalf of foreign governments, foreign political parties, and other foreign principals so that the Government and the people of the United States may be informed of the identity of such persons and may appraise their statements and actions in the light of their associations and activities.'

*Meese v. Keene*, 481 U.S. 465, 469 (1987) (brackets omitted) (quoting 56 Stat. 248, 248–49 (1942)). To promote this purpose, generally, "[n]o person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement and supplements thereto." 22 U.S.C. § 612(a). The registration requires extensive details about the registrant's business, agreements,

and activities. *See id.* All aspects of this registration statement must be made public: The Attorney General must "retain in permanent form one copy of all registration statements furnished under this subchapter, and the same shall be public records and open to public examination and inspection." 22 U.S.C. §§ 616(a), (d); *see also* 28 C.F.R. §§ 5.600, 5.601.

Congress has repeatedly confirmed that the statutory purpose is to provide public disclosure to promote transparency and accountability. The House Report accompanying the 1966 amendments emphasized again that "public disclosures as required by the act will permit the Government and the people of the United States to be informed as to the identities and activities of [foreign agents] and so be better able to appraise them and the purpose for which they act." H.R. REP. NO. 1470, 89th Cong., 2d Sess. 1966, 1966 U.S.C.C.A.N. 2397, 2398, 1966 WL 4302 (May 3, 1966). Those amendments aimed at public disclosure going beyond "the old foreign agent," extending to "the lawyer-lobbyist and public relations counsel whose object is to" "influence" the "policies [of the U.S. Government]" "to the satisfaction of his particular client." S. REP. NO. 875, at 4, 88th Cong., 2d Sess. (Feb. 21, 1964). As the Senate Report put it, "disclosure by the agent to the Department of Justice is not enough"; instead, "the purpose" is to put the "pitiless spotlight of publicity" on such agents. *Id.* at 5; *see also* S. REP. NO. 143, at 4–5, 89th Cong., 1st Sess. (Apr. 1, 1965) (similar).

Congress likewise emphasized that "responsible representative Government requires public awareness of the efforts of paid lobbyists to influence the public decisionmaking process in both the legislative and executive branches of the Federal

Government." Lobbying Disclosure Act of 1995, PUB. L. NO. 104-65, 109 Stat, 691, § 2 (Dec. 19, 1995). More, "the effective public disclosure of the identity and extent of the efforts of paid lobbyists to influence Federal officials in the conduct of Government actions will increase public confidence in the integrity of Government." *Id.*

Thus, like other disclosure statutes, the statute "ensure[s] an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *see Pub. Citizen v. Dep't of Just.*, 491 U.S. 440, 459 (1989) (noting that another disclosure statute "enhance[s]" "public accountability"); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) ("[D]isclosure, not secrecy, is the dominant objective.").

Disclosure also promotes other aspects of our democratic system of government. As shown by this case and the legislative history, Congress has a significant interest in foreign affairs issues. *See, e.g.*, U.S. CONST. art. I, § 8, cl. 3 (Commerce Clause). And "a legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504 (1975) (cleaned up). "[S]ome means of compulsion" are often "essential to obtain what is needed." *Id.* at 505 (cleaned up); *see Watkins v. United States*, 354 U.S. 178, 187 (1957).

**B.** **America First Legal has suffered an informational injury and has standing**

The Foreign Agents Registration Act was enacted so that "the people of the United States may be informed of the identity of [foreign agents] and may appraise their statements and actions in the light of their associations and activities." *Meese*, 481 U.S. at 469 (quoting 56 Stat. at 49). Obviously, if an agent of a foreign principal fails or refuses to register, and the Defendants, knowing that registration and disclosure are required, stand idly by, then there is nothing to disclose, and the public is deprived of the information Congress intended them to have.

Mr. Biden's Foreign Agents Registration Act information is directly related both to America First Legal's public education mission in support of policies aimed at protecting our nation's sovereignty, economic security, and Constitution, and to its core function of disclosing relevant information about the operation of the government and public integrity to support the rule of law. Pl's Statement of Undisputed Facts ¶¶ 104, 108. As the courts have repeatedly said when upholding similar claims of informational injury, "there 'is no reason to doubt their claim that the information would help [the plaintiff].'" *Ethyl Corp. v. EPA*, 306 F.3d 1144, 1148 (D.C. Cir. 2002) (quoting *Akins*, 524 U.S. at 21 (1998)). The Defendants' failure to act as required by law "den[ies] [America First Legal] access to information and avenues of redress they wish to use in their routine information-dispensing [and advocacy] activities." *Action All. of Senior Citizens of Greater Philadelphia v. Heckler*, 789 F.2d

931, 937–38 (D.C. Cir. 1986).[3] Accordingly, the Defendants have inflicted "the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals*, 828 F.3d at 992.

A long line of analogous precedents under similar disclosure statutes supports the Plaintiff's standing. *See Pub. Citizen*, 491 U.S. at 449 (1989) ("[R]efusal to permit appellants to scrutinize [a] Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue."); *Akins*, 524 U.S. at 21 (A plaintiff "suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute."); *VoteVets Action Fund v. Dep't of Veterans Affs.*, 992 F.3d 1097, 1103 (D.C. Cir. 2021) ("VoteVets claims an informational injury under FACA by pleading that the Council and VA failed to comply with the statute's disclosure and transparency requirements."); *PETA*, 797 F.3d at 1095 ("Because PETA's alleged injuries—denial of access to bird-related AWA information . . . —are concrete and specific to the work in which they are engaged, we find that PETA has alleged a cognizable injury sufficient to support standing." (cleaned up)); *Am. Soc. for Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 23 (D.C. Cir. 2011) ("For purposes of informational standing, a plaintiff is

---

[3] To take just one example of how the information required by statute is specifically relevant to America First Legal's mission, some have tried to separate some of Mr. Biden's foreign business deals from senior U.S. government officials, including the current President, by suggesting that Mr. Biden merely had an "illusion of access" to his father, not actual access. Ex. E at 116. Whatever the merits of that argument— which is contradicted by much evidence, *see* Ex. E at 117—the whole point of requiring Mr. Biden to register is so that Americans can know *which* policy matters may be subject to foreign influence.

injured-in-fact because he did not get what the statute entitled him to receive." (cleaned up)); *Jud. Watch, Inc. v. Dep't of Com.*, 583 F.3d 871, 873 (D.C. Cir. 2009) ("In the context of a FACA claim, an agency's refusal to disclose information that the act requires be revealed constitutes a sufficient injury."); *Byrd v. EPA*, 174 F.3d 239, 243 (D.C. Cir. 1999): "[A] refusal to provide information to which one is entitled under FACA constitutes a cognizable injury sufficient to establish Article III standing.").

"[T]hat other citizens or groups of citizens might make the same complaint after unsuccessfully demanding disclosure under does not lessen [America First Legal's] asserted injury, any more than the fact that numerous citizens might request the same information under the Freedom of Information Act entails that those who have been denied access do not possess a sufficient basis to sue." *Pub. Citizen*, 491 U.S. at 449–50; *see Akins*, 524 U.S. at 24–25 (same); *see also PETA*, 797 F.3d at 1093 ("The United States Supreme Court has made plain that a 'concrete and demonstrable injury to an organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests' and thus suffices for standing." (cleaned up) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Nor does the Plaintiff's standing depend on any possibility that "the [Defendants] might reach the same result exercising its discretionary powers lawfully" (though no such possibility exists here, as explained next). *Akins*, 524 U.S. at 25.

## II.    The Defendants Have Nondiscretionary Duties To Seek Mr. Biden's Registration And Then Disclose It to America First Legal

Mr. Biden is obligated to register as an agent of foreign principals and to

properly label and file all political propaganda or "informational materials" he has transmitted, by email or otherwise, on their behalf. 22 U.S.C. §§ 612(a), 614.[4] The Defendants have chosen not to seek his compliance and harmed America First Legal. Pl's Statement of Undisputed Facts ¶¶ 104–08.

The Administrative Procedure Act establishes a basic presumption of judicial review for one suffering legal wrong because of agency action. *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (cleaned up). This presumption controls here because the Foreign Agents Registration Act does not preclude review, nor does it commit to the Defendants' discretion their duty to seek Mr. Biden's registration and then disclose it to America First Legal and the public. On the facts of this case, the Plaintiff is entitled to judicial review and should be granted the requested relief as a matter of law.

### A.    The Defendants' duties are non-discretionary

Section 618(a), titled "Violations; False Statements and Willful Omissions," penalizes willful violations of the statute and its regulations, and specifies criminal penalties. The Defendants have unreviewable discretion under this subsubsection to prosecute (or not) alleged violations. But this case is not about criminal prosecution

---

[4] Notably, Mr. Biden is prohibited from transmitting, conveying, or otherwise furnishing to any agency or official of the Government (including, for example, his father) for or in the interests of such foreign principal any political propaganda and from requesting from any such agency or official for or in the interests of such foreign principal any information or advice with respect to any matter pertaining to the political or public interests, policies or relations of a foreign country or of a political party or pertaining to the foreign or domestic policies of the United States, unless the propaganda or the request is prefaced or accompanied by a true and accurate statement to the effect that he is registered as an agent of such foreign principal. 22 U.S.C. § 614(f).

under § 618(a). Instead, it is about the Defendants' breach of specific public information duties owed to the Plaintiff under §§ 616(d) and 618(g) and (f).

Section 706(1) authorizes this Court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). *Norton*, 542 U.S. at 64 (2004). Generally, courts do not review the exercise of enforcement discretion committed to agencies. *See Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 55 F.4th 918, 919 (D.C. Cir. 2022) (citing *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)). The Administrative Procedure Act enshrines this principle by explicitly withholding judicial review of matters "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). But it is well established that a § 706(1) claim proceeds if the "plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton,* 542 U.S. at 64 (emphasis in original).

The Foreign Agents Registration Act's plain text, statutory context, and purpose demonstrate that seeking Mr. Biden's registration and publishing it for the public to see are discrete agency actions that the Defendants are required to take. Section 618 "clearly reins in the agency's discretion," so the Defendants' failure to follow it triggers § 706(1) review. *Meina Xie v. Kerry*, 780 F.3d 405, 408 (D.C. Cir. 2015). These subsections cabin the Defendants' discretion and thereby ensure that the statute's fundamental purpose—public disclosure—is advanced and served.

Section 618(f) provides in relevant part:

[W]henever any agent of a foreign principal fails to comply with any of the provisions of this subchapter or the regulations issued thereunder, or otherwise is in violation of the subchapter, the Attorney General may make application to the appropriate United States district court for an order

> enjoining such acts or enjoining such person from continuing to act as an agent of such foreign principal, or for an order requiring compliance with any appropriate provision of the subchapter or regulation thereunder.

The word "may" usually implies some degree of discretion.[5] However, text, structure, and purpose make it clear the word "may" only authorizes the Defendants to choose between an order enjoining "such acts" *or* an order enjoining a person from continuing to act as an agent of a foreign principal, *or* a compliance order. "When a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." *Christensen v. Harris County*, 529 U.S. 576, 583 (2000) (cleaned up). Doing nothing is not one of the choices. *See* A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107–11 (2012) (explaining that under the negative-implication canon, "specification of the one implies the exclusion of the other").

Alternatively, § 618(g) provides that if an agent of a foreign principal files a deficient registration statement, then the Attorney General "shall" notify that person in writing and specify the deficiencies. By using "shall" in this subsection, Congress imposed a discrete obligation on the Defendants. *See Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 400 (2008); *Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998); *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 n.9 (1995). Of course, § 618(g) does not expressly require the Defendants to notify Mr. Biden of his obligation to file a registration statement. Read literally, this subsection applies to

---

[5] This common-sense principle of statutory construction is by no means invariable and can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute. *United States v. Rodgers*, 461 U.S. 677, 706 (1983) (Brennan, J.); *Sierra Club v. Jackson*, 648 F.3d 848, 856 (D.C. Cir. 2011); *Galvin v. Del Toro*, 586 F. Supp. 3d 1, 14 (D.D.C. 2022); *see also* "Verb forms," 3 SUTHERLAND STATUTORY CONSTRUCTION § 57:10 (8th ed.).

filed but incomplete or inaccurate registration statements and filings. However, fidelity to the text requires situating "text in context." *Biden v. Nebraska*, 143 S. Ct. 2355, 2378 (2023) (Barrett, J., concurring); *see also* SCALIA & GARNER, *supra* at 63. Given the statute's structure and purpose, the better reading is that the failure to register is also a deficiency subject to the notice provision.

The Foreign Agents Registration Act was enacted to protect the public's compelling informational interest in knowing how and where agents of foreign principals are at work in the body politic. Congress mandated broad disclosure and charged the Defendants with the duty of gathering, cataloging, and publishing the specified information. The fact that the son of a former Vice President and current President is or has been an agent of Ukrainian, Romanian, Kazakhstani, and Chinese principals would seem to be precisely the sort of information Congress intended the Defendants to disclose. But if the Defendants, knowing that a person is an agent of a foreign principal, have the discretion to do nothing, then they can, on a case-by-case basis, disrupt the statutory scheme and torpedo the public's right to know.

The absurdity canon militates against construing the Foreign Agents Registration Act, which was enacted to provide the public with comprehensive information about the identities and activities of agents of foreign principals, *see* §§ 612, 614, 616, to delegate the Defendants absolute, unreviewable discretion to do nothing in this case. *See Pub. Citizen,* 491 U.S. at 455; *Eagle Pharms., Inc.*, 952 F.3d at 332–33 (Although "literal interpretation need not rise to the level of 'absurdity' . . . . , there must be evidence that Congress meant something other than what it literally

20

said before a court can depart from plain meaning."); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1068 (D.C. Cir. 1998) ("In deciding whether a result is absurd, the Court should consider not only whether that result is contrary to common sense, but also whether it is inconsistent with the clear intentions of the statute's drafters—that is, whether the result is absurd when considered in the particular statutory context.") (citations omitted); SCALIA & GARNER, *supra* at 235 ("What the rule of absurdity seeks to do is what all rules of interpretation seek to do: make sense of the text."). Again, the Defendants' discretion to prosecute (or not) Mr. Biden under § 618(a) is unreviewable. But Congress could not have intended to give them the discretion to look away from a known agent for a foreign principal, fail or refuse to seek a § 612 registration statement, and then violate the public's informational rights guaranteed by § 616, for any reason or no reason. Such a holding would irrationally eviscerate the statutory scheme and Congress could not have intended it. Simply put, if § 618(f) does not mandate the Defendants' action here, then § 618(g) must. Otherwise, the Foreign Agents Registration Act, which in the Defendants' words, "helps protect the integrity of American democracy by combating covert foreign government influence in our political process," *see Protecting the United States*, *supra*, ceases to function.

B.   **The Defendants' refusal to secure Mr. Biden's registration and disclose it is subject to judicial review**

The Defendants ask the public, "[i]f you believe an individual or entity is violating [the Foreign Agents Registration Act] or has an obligation to register, please contact the FARA unit." America First Legal did this on March 3, 2023, pointing out the evidence (primarily from e-mails that exist on Mr. Biden's laptop, which has been

21

in the Defendants' possession since 2019) that he is an agent of the Ukrainian corporation Burisma Holdings Ltd. However, the Defendants have chosen not to act, not on the Plaintiff's complaint and not on the laptop.

There are two possible explanations for this. The first is that the Defendants received America First Legal's complaint, reviewed it, and determined that Mr. Biden was not required to register as the agent of a foreign principal. For the reasons explained above, such a determination would be contrary to 5 U.S.C. § 706(2)(A), (C). The second is that the Defendants determined that Mr. Biden *was* required to register but decided to do nothing. Such a determination would be contrary to 5 U.S.C. § 706(1).

Regardless, the Department's decision not to seek Mr. Biden's registration and, by necessary implication, withhold it from public review, is reviewable agency action. *Norton*, 542 U.S. at 62 (2004); 5 U.S.C. § 704. The Defendants' decision not to secure Mr. Biden's registration helps him but harms the public generally and America First Legal specifically. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997); *U.S. Army Corps of Engrs. v. Hawkes Co.*, 578 U.S. 590, 597 (2016). Furthermore, America First Legal's informational injury easily satisfies the zone of interest requirement. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224–25 (2012) (quoting *Clarke v. Secs. Indus. Assn.*, 479 U.S. 388, 399 (1987).

## Conclusion

Congress enacted the Foreign Agent Registration Act "to reduce the influence of foreign propaganda circulating in the United States," and it "[a]nticipat[ed]] that

greater transparency could help achieve these ends." Congressional Research Service, *Foreign Agents Registration Act (FARA): A Legal Overview* (updated Mar. 9, 2023). Similarly, one of the reasons Congress adopted the Administrative Procedure Act was so that Congress could rely on outside organizations like America First Legal to obtain information from government agencies as part of Congress's constitutional oversight function. Mathew D. McCubbins & Thomas Schwartz, *Congressional Oversight Overlooked: Police Patrols Versus Fire Alarms*, 28 AM. J. POL. SCI. 168–169 (1984) (describing Congress as using administrative procedures to delegate oversight responsibilities to regulated parties); McNollGast, *Administrative Procedures as Instrument of Political Control*, 3 J. L. ECON. & ORG. 254 (1987) (same); DANIEL Z. EPSTEIN, THE INVESTIGATIVE STATE: REGULATORY OVERSIGHT IN THE UNITED STATES (2023) (providing empirical evidence that Congress's capacity to conduct oversight depends upon regulated parties reporting violations of administrative procedures).

Section 706 of the Administrative Procedure Act provides that a reviewing court shall hold unlawful and set aside agency action that is not in accordance with law or in excess of statutory jurisdiction, authority, or limitations. 5 U.S.C. § 706(2)(A), (C).  Here, the Defendants not only acted in a manner contrary to law by failing to seek Mr. Biden's registration, they also unlawfully withheld statutorily required action. 5 U.S.C. § 706(1). Securing Mr. Biden's registration and making his information public are discrete agency actions that the Defendants must take. *Norton*, 542 U.S. at 64. Because 22 U.S.C. 618 "clearly reins in the agency's discretion," the Defendants' failure to do these specific things is unlawful. *Meina Xie*,

780 F.3d at 408 (D.C. Cir. 2015); *see also Brock v. Pierce County*, 476 U.S. 253, 260

n.7 (1986). Judicial review and relief are proper here.

/s/ *Reed D. Rubinstein*
Reed D. Rubinstein (D.C. Bar No. 400153)
James K. Rogers (AZ Bar No. 027287)*
Michael Ding (D.C. Bar No. 1027252)
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, D.C. 20003
Tel.: (202) 964-3721
E-mail: reed.rubinstein@aflegal.org
E-mail: james.rogers@aflegal.org
E-mail: michael.ding@aflegal.org

*Application for Pro Hac Vice forthcoming*

24