**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

AMERICA FIRST LEGAL FOUNDATION,

        Plaintiff,

    v.

TODD BLANCHE, *Acting Attorney General of the United States, in his official capacity*, *et al.*,

        Defendants.

Case No. 23-cv-2070 (JMC)

---

**MEMORANDUM OPINION**

The Foreign Agents Registration Act of 1938 requires agents of foreign principals to file registration statements with the Department of Justice. The Act also requires the Department to make those registration statements publicly available. The America First Legal Foundation alleges that Hunter Biden is an agent of a foreign principal but has not filed a registration statement. The Foundation filed this lawsuit against the Attorney General[1] and the Department of Justice seeking to compel the Government to require Biden to register. The Foundation has not plausibly alleged that it has a legally cognizable interest in compelling the Government to take that action, so the Court grants the Government's motion to dismiss for lack of jurisdiction.[2]

---

[1] Acting Attorney General Blanche has been substituted for his predecessor. *See* Fed. R. Civ. P. 25(d).

[2] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

1

I.      BACKGROUND

   A.  Statutory Background

The Foreign Agents Registration Act of 1938 (FARA) "requires all agents of foreign principals to file detailed registration statements, describing the nature of their business and their political activities." *Meese v. Keene*, 481 U.S. 465, 469 (1987). When Congress amended the Act in 1942, it made clear that the law's purpose was "to protect the national defense, internal security, and foreign relations of the United States by requiring public disclosure by persons engaging in propaganda activities and other activities for or on behalf of foreign governments, foreign political parties, and other foreign principals so that the Government and the people of the United States may be informed of the identity of such persons and may appraise their statements and actions in light of their associations and activities." Act of Apr. 29, 1942, ch. 263, Pub. L. No. 77-532, 56 Stat. 248–49.

To that end, the law prohibits any person from "act[ing] as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement." 22 U.S.C. § 612(a). The registration statement must detail a bevy of information about the agent's relationship with the foreign principal, including a "comprehensive statement of the nature of the registrant's business," "[c]opies of each written agreement and the terms and conditions of each oral agreement . . . by reason of which the registrant is an agent of a foreign principal," and the "nature and amount of contributions, income, money, or thing of value, if any, that the registrant has received within the preceding sixty days from each such foreign principal." *Id.* § 612(a)(1)–(11). Registrants are required to "supplement" their registration statements every six months after initially filing. *Id.* § 612(b).

The Act includes another provision that addresses the public availability of registration statements after they are filed. "[R]egistration statements," that section says, are "public records

2

and open to public examination." 22 U.S.C. § 616(a). And the Attorney General is required to "maintain, and make available to the public over the Internet . . . an electronic database that . . . includes the information contained in registration statements and updates filed under" the Act. *Id.* § 616(d). Registrants are required to file an "electronic form" of their registration statements, and those must be made "available for public inspection over the Internet as soon as technically practicable after the registration statement or update is filed." *Id.* § 616(d)(2).

Finally, the Act includes a section addressing enforcement. *See* 22 U.S.C. § 618. That section criminalizes "willful violat[ions]" of the Act, along with "willfully mak[ing] a false statement of a material fact" or "willfully omit[ting]" a material fact in a registration statement. *Id.* § 618(a). The Act also grants the Attorney General the authority to "make [an] application to the appropriate United States district court for an order enjoining" violations of the law or "an order requiring compliance" with the law. *Id.* § 618(f). And it requires the Attorney General to notify registrants "in writing" if he "determines that [their] registration statement does not comply" with the Act's requirements. *Id.* § 618(g). Once notified, registrants have ten days to either file "an amended registration statement in full compliance with" the Act or to stop "act[ing] as an agent of a foreign principal." *Id.*

**B. Factual and Procedural Background**

America First Legal Foundation is a "national nonprofit legal foundation that advocates for 'America First' policies to protect [] sovereignty, economic security, and Constitutional order." ECF 1 ¶ 5.[3] To further its mission, the Foundation "gathers official information, analyzing and disseminating it through reports, press releases, media, and communications with congressional

---

[3] Because the Government filed a motion to dismiss and the Court grants that motion without reaching America First's motion for summary judgment, the Court recounts the facts—accepted for current purposes as true—from the complaint. *See ZilYen, Inc. v. Rubber Mfrs. Ass'n*, 935 F. Supp. 2d 211, 214 n.2, 225 (D.D.C. 2013) (doing same where defendant's motion to dismiss is granted and plaintiff's cross motion denied as moot).

oversight committees." *Id.* One of the sources the Foundation relies on when gathering information are "[f]oreign agent registration" statements. *Id.*

The complaint alleges that Hunter Biden acted as an agent of several foreign principals—the "Ukranian gas company Burisma" and two Chinese energy companies—but has not registered as required by FARA. ECF 1 ¶¶ 4, 29, 37, 38–43. In March 2023, the Foundation "filed a complaint with the" Department of Justice "alleging that Hunter Biden was required to register as a foreign agent." *Id.* ¶ 47. The Department "neither adjudicated th[at] complaint nor required Mr. Biden to register." *Id.*

The Foundation then came to this Court, suing the Attorney General and Department of Justice, but not Hunter Biden. *See* ECF 1 at 1. In its complaint, the Foundation alleges that in failing to require Biden to "file[] a true and complete registration statement," the Attorney General has "unlawfully with[e]ld[] and unreasonably delay[ed] nondiscretionary agency action." *Id.* ¶¶ 46–47. The complaint also claims that the Department of Justice acted arbitrarily and capriciously when it indicted for failing to register an official associated with one of the Chinese energy companies Biden allegedly worked with but took no action to "require [Biden] to register as a foreign agent." *Id.* ¶ 48. The Foundation says that the Department's "refusal to require Mr. Biden to file a registration statement has deprived [the Foundation] of access to information for which it has a statutory right." *Id.* ¶ 49.

After the complaint was filed, the parties asked the Court to adopt their proposed schedule for the briefing of cross motions. *See* ECF 9. America First planned to file a motion for summary judgment prior to the Government's deadline for responding to the complaint, so the parties agreed that America First should file its summary judgment motion first, followed by the Government's cross motion to dismiss. *See id.* ¶¶ 2–3. The Court adopted the proposed schedule and both sides

filed their motions. *See* ECF 10; ECF 12. The Government also filed a motion to strike the Foundation's statement of undisputed material facts and to excuse the Government from its obligation to file a certified list of the contents of the administrative record as required by Local Civil Rule 7(n). *See* ECF 11.

## II.   LEGAL STANDARD

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Id.* As "[t]he party invoking federal jurisdiction," the plaintiff "bears the burden of establishing" the "three elements" of standing: "an injury in fact," "a causal connection between the injury and the conduct complained of," and that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Faced with a Rule 12(b)(1) motion to dismiss for lack of standing, a court takes the "factual allegations in the complaint as true." *Kareem v. Haspel*, 986 F.3d 859, 866 n.7 (D.C. Cir. 2021).

"To survive" a Rule 12(b)(6) "motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court "must treat the complaint's factual allegations as true . . . and must grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).

## III.   ANALYSIS

The Government moved to dismiss under both Rule 12(b)(1), arguing the Court lacks jurisdiction because the Foundation does not have standing to press its claim, and under Rule 12(b)(6). Because the Court "must find Article III standing before addressing the merits," it starts there. *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 179 (D.C. Cir. 2012). As it turns out, the analysis

ends there, too. The Foundation has not plausibly alleged a cognizable "injury in fact," so has not presented a justiciable case or controversy. *United States v. Texas*, 599 U.S. 670, 676 (2023).

The Foundation's claim is that, because Hunter Biden is an agent of a foreign principal, the Attorney General is required by FARA "to ensure" that Biden files a registration statement. ECF 1 ¶ 46. By failing do so, the Foundation concludes, the Attorney General "unlawfully with[e]ld[]" a "ministerial and non-discretionary duty" and acted arbitrarily and capriciously. *Id.* ¶¶ 46–48. But "in American jurisprudence . . . , a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Texas*, 599 U.S. at 677–78 (applying same principle to civil enforcement). A bare interest in having the Attorney General enforce the law against Biden, then, is insufficient to open the courthouse doors.

Seemingly recognizing as much, America First does not claim that its legally cognizable interest is in having Biden (or the Government) follow the law. Instead, the organization claims that it is suffering an "informational injury." ECF 10-1 at 7; *see also* ECF 15 at 4–5 (premising its standing on informational injury). Its theory is that, if it prevails in this lawsuit, the Government will be required to "seek Mr. Biden's registration and related filings and then publicly disclose them," which "might," in turn, provide the Foundation with "additional factual information that Congress requires" the Department of Justice "to make public." ECF 10-1 at 7–8.

It is true that a plaintiff alleging they have been deprived of information to which they are statutorily entitled can satisfy the standing requirements. To demonstrate that kind of "concrete and particularized informational injury," a plaintiff must allege that "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress

sought to prevent by requiring disclosure." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016). But in a case that closely resembles this one—*Friends of Animals v. Jewell*—the D.C. Circuit held that the first of those requirements is only satisfied where the statutory obligation the plaintiff "seeks to enforce" is the one that "mandate[s] the release of information." *Id.* at 994. That holding forecloses the Foundation's theory of injury in this case.

In *Friends of Animals*, the plaintiff alleged that the Secretary of the Interior failed to make certain findings within the time required by a statute—what the Circuit called the statute's "deadline requirement." 828 F.3d at 992–93. The plaintiff's informational injury arose, it contended, because after the Secretary made those findings she would have "publish[ed] certain information in the Federal Register"—what the Circuit called the "disclosure requirement." *Id.* at 990, 992. The statutory scheme was "sequential"—only after making the findings subject to the deadline requirement would the Secretary be required to publish the information subject to the disclosure requirement. *Id.* at 993. Because the plaintiff was challenging the Secretary's failure to timely make the findings, the panel explained that the complaint was "seek[ing] to have the court order compliance with" the "deadline requirement, not [the] disclosure requirement." *Id.* at 993. The deadline requirement, however, did "not mandate the disclosure of any information whatsoever." *Id.* For that reason, the plaintiff did not plausibly allege that it was suffering a cognizable injury in fact based on the failure to disclose information as required by a statute.

That same reasoning applies here. FARA requires "agent[s] of a foreign principal" to "file . . . a registration statement" and then "supplement" that statement every six months—what the Court will call the registration requirement. 22 U.S.C. § 612(a), (b). It then empowers—the Foundation says requires, but resolving that dispute makes no difference to this standing analysis—the Attorney General to take certain steps when someone fails to properly register. *See*

*id.* § 618(a), (f), (g) (criminal and civil remedial powers). The Court will call those the enforcement authorities. Finally, it requires the Attorney General to "maintain, and make available to the public over the Internet, . . . an electronic database that . . . includes the information contained in registration statements and updates filed" under FARA's requirements. *Id.* § 616(d). That's the disclosure requirement. Just like in *Friends of Animals*, these "requirements arise sequentially." 828 F.3d at 993. An agent is obligated to comply with the registration requirement, their failure to do so, or to adequately do so, triggers the enforcement authorities, and then, only after the "registration statements and updates [are] filed"—or "furnished" as another provision in the public access section puts it—does the disclosure requirement kick in. 22 U.S.C. § 616(a), (d)(1)(A); *see also id.* § 616(d)(2) (requiring statements filed in "electronic form" to be made available "as soon as technically practicable *after* the registration statement or update is filed" (emphasis added)); *id.* § 614(c) (public inspection provision applicable to "information materials" applies to materials that are "filed with the Attorney General"). That sequential scheme makes sense—there is nothing for the Government to disclose until a registration statement is filed. *See Am. First Legal Found. v. Bondi*, No. 24-cv-3105, 2025 WL 2220034, at *2 (D.D.C. Aug 5, 2025) ("Plaintiff has a statutory right to the alleged agents' registration statements only once those statements have been filed with the Attorney General.").

Now return to the Foundation's complaint. The Foundation is asking the Court to "[c]ompel" the Government "to require Mr. Biden to register as a foreign agent" and "[h]old unlawful" the Government's "refusal to require Mr. Biden's registration as a foreign agent." ECF 1 at 16 (prayer for relief). As that "prayer for relief" demonstrates, *Friends of Animals*, 828 F.3d at 992, the organization is asking the Court to order the Government to comply with the registration requirement and enforcement authority provisions. Those provisions "do[] not

mandate the disclosure of any information." *Id.* at 993. The disclosure requirement does that work. The Foundation has therefore failed to plausibly allege "it has been deprived of information that . . . a statute requires the government" to disclose. *Id.* at 992; *see also Am. First Legal Found. v. Greer*, 153 F.4th 1311, 1315–16 (D.C. Cir. 2025) (same plaintiff did not plausibly allege informational injury because section of statute it was seeking to enforce "creates no entitlement to receive information").

And although there might be other ways to plausibly allege a cognizable informational injury—for instance, that denial of the sought information causes "downstream consequences," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021)—the Foundation has rested its entire informational injury argument on the Government's supposed failure to disclose information "a statute requires" it to disclose. ECF 10-1 at 7, 14 (invoking this rule); ECF 15 at 4–5 (making only this argument in response to Government's motion to dismiss). The Foundation has therefore "failed to establish that it has informational standing" under the "sole theory" it "advanced." *Friends of Animals*, 828 F.3d at 995. In reaching that conclusion, the Court joins another court in this district that held the Foundation lacks standing to "seek[] to compel" the Department of Justice and Attorney General "to register" claimed-foreign agents under FARA. *Am. First Legal Found.*, 2025 WL 2220034, at *1.

Despite the Government's heavy reliance in its motion to dismiss on *Friends of Animals* and the line of reasoning laid out above, *see* ECF 12 at 23, the Foundation did not even attempt to distinguish that decision in its opposition to the motion, *see* ECF 15 at 4–5 (citing the decision only once, and only for a general statement of the standard for informational injuries). Instead, the Foundation spent its time arguing that this case involves "extreme non-enforcement" and therefore

9

is the rare case "involving the Executive Branch's alleged failure" to enforce the law over which federal courts have jurisdiction. ECF 15 at 6. That argument is both beside the point and wrong.

It is beside the point because even in a case involving "extreme . . . non-enforcement" a plaintiff must still "show an injury in fact." *Texas*, 599 U.S. at 676, 682–83. Extreme non-enforcement plays a role in cases where a plaintiff with an "injury in fact" would normally not be able to challenge the "Executive Branch's alleged failure" to enforce the law, given the general rule that cases of that kind are non-justiciable. *Id.* at 676, 681. The Supreme Court's decision in *United States v. Texas* illustrates the point. There was no doubt that the States' alleged "[m]onetary" injuries there were "an injury." *Id.* at 676. The problem was that, because those monetary injuries arose from non-enforcement, they were not "legally and judicially cognizable." *Id.* The Court went on to explain that the States' monetary injuries "might" have been cognizable "if the Executive Branch wholly abandoned its statutory responsibilities" to enforce the relevant law. *Id.* at 682. Here, though, the Foundation has not plausibly alleged an injury in fact in the first place—as just explained, the complaint does not allege an informational injury. Without an injury, the Foundation would lack standing to challenge the Government's failure to enforce the law even if it did amount to "an extreme case of non-enforcement." *Id.* at 683; *see also TransUnion*, 594 U.S. at 442 ("No concrete harm, no standing.").

In any event, the complaint does not plausibly allege "an extreme case of non-enforcement." *Texas*, 599 U.S. at 683. The Supreme Court has posited that "the standing calculus might change if the Executive Branch wholly abandoned its statutory responsibilities" to enforce a particular law. *Id.* at 682. In so doing, it drew on a related proposition that "a plaintiff arguably [can] obtain" review under the Administrative Procedure Act of "agency non-enforcement if an agency 'has consciously and expressly adopted a general policy that is so extreme as to amount to

an abdication of its statutory responsibilities.'" *Id.* at 682–83 (quoting *Heckler v. Chaney*, 470 U.S. 821, 833 n.4 (1985)). The complaint does not allege "a general policy" of non-enforcement. *Id.* To the contrary, it expressly identifies another example of the Government indicting someone for "fail[ing] to register as a foreign agent" and complains only about the Government's failure to enforce FARA against Biden. ECF 1 ¶ 48.

The Foundation's non-enforcement theory therefore does nothing to help it establish standing. Nor does that theory entitle the Foundation to jurisdictional discovery. *Contra* ECF 15 at 14. "[N]o facts additional discovery could produce would affect the jurisdictional analysis." *Lewis v. Mutond*, 62 F.4th 587, 595 (D.C. Cir. 2023). As the Court explained, even if the Foundation managed to show that this case involved extreme non-enforcement, it would still not have established that it is suffering a cognizable informational injury. Because the Foundation has only sought jurisdictional discovery to determine whether this is "an extreme case of non-enforcement," ECF 15 at 14, there is no "good faith" reason to believe that "reasonable discovery could supplement" the deficient "jurisdictional allegations" related to the Foundation's informational injury, *Lewis*, 62 F.4th at 596.

"[B]ecause the [C]ourt grants the [Government's] motion to dismiss, the [C]ourt denies the [Foundation's] motion for summary judgment as moot." *Tinsley v. Widener*, 150 F. Supp. 2d 7, 12 (D.D.C. 2001). And because the Court will not consider the Foundation's motion for summary judgment, the Court also denies as moot the Government's motion to strike the statement of undisputed material facts that the Foundation filed along with its summary judgment motion. The Court does, however, grant the Government's request to excuse compliance with Local Civil Rule 7(n). As the Court's opinion makes clear, "threshold questions of law" require dismissal of the

11

complaint and resort to "the administrative record" is unnecessary. *Am. First Legal Found.*, 2025 WL 2220034, at *4.

*    *    *

The Government's motion to dismiss for lack of jurisdiction, ECF 12, is **GRANTED**. The Government's motion to excuse compliance with Local Civil Rule 7(n) and to strike the Foundation's statement of undisputed material facts, ECF 11, is **GRANTED in part** and **DENIED as moot in part**. The Foundation's motion for summary judgment, ECF 10, is **DENIED as moot**. This case is **DISMISSED**. The Court will issue a separate order consistent with this opinion.

 **SO ORDERED**.

_____
JIA M. COBB
U.S. District Court Judge

Date: May 5, 2026